# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAPITAL BLUECROSS, | : | Civil No. 1:20-CV-02299 |
| | : | |
| Plaintiff, | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| ATLANTIC SPECIALTY | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

## I.  Introduction.

In the instant matter, the plaintiff, Capital BlueCross ("Capital"), alleges bad faith on the part of one of its insurers, Atlantic Specialty Insurance Company ("Atlantic").  Capital claims that, despite Atlantic's responsibilities under its insurance policy, Atlantic has failed to participate in Capital's defense against another lawsuit. *Doc. 40* at 1–2.  As the present suit proceeded, the parties became embroiled in discovery disputes, with one dispute presently under our consideration regarding whether Capital must disclose certain documents and information to Atlantic. *See doc. 67.*  Currently pending before the Court are two motions to intervene for the limited purpose of participating in this discovery dispute, or otherwise asserting related privileges. *Docs. 84, 95.*  For the reasons

discussed below, we will grant both motions to intervene and permit the intervenors to brief their positions regarding the discovery dispute as described in further detail in the accompanying order.

## II.  Background and Procedural History.

We will save a more extensive summary of the history of this protracted litigation for a future occasion.  Here, since we primarily write for the parties, we will simply summarize the factual background and procedural history relevant to the motions to intervene.

Capital currently faces "protracted and cumbersome multi-district litigation" in the Northern District of Alabama. *Doc. 40* at 1.  According to Capital, Atlantic is required by an insurance policy to "participate in the defense and resolution of this Alabama litigation[.]" *Id.* at 1–2.  But Atlantic has refused to do so. *Id.* Instead, according to Capital, Atlantic "has engaged in purposefully dilatory and obstructive bad faith conduct in an effort to frustrate Capital['s] efforts to obtain the benefits of its insurance policy." *Id.* at 2.  Accordingly, Capital seeks "a declaration, pursuant to 28 U.S.C. § 2201, that Atlantic . . . must provide coverage for defense and indemnity costs arising from [the] multidistrict litigation pending against Capital . . . in the United States District Court for the Northern District of Alabama" as well as compensatory, consequential, and punitive damages. *Id.*

Although the present case has been pending since December 8, 2020, the parties remain in the discovery phase of litigation after multiple extensions of time. *See docket generally*.  On June 26, 2023, Capital filed a letter with the Court seeking resolution of a discovery dispute. *Doc. 47*.  Atlantic sought to depose Mr. St. Hilaire, Capital's past president and CEO. *Id.*  But Capital believed Mr. St. Hilaire should be shielded from deposition based on his status as a high-level corporate official, and Capital, therefore, sought Court intervention. *Id.*  Judge Conner, the district judge assigned to this case at the time, referred the dispute to us.[1] *See doc. 48*.  After considering further letter briefs (*doc. 50, 61*) and holding two conferences with the parties (*docs. 57, 58, 63, 64*), we decided to permit the deposition of Mr. St. Hilaire for no more than three hours. *Doc. 65*.

It became obvious, however, that the parties also disputed whether certain material sought in discovery was privileged, and that this dispute would certainly arise during Mr. St. Hilaire's deposition. *Id.*  Accordingly, in order to narrow down the issues still in dispute, we ordered the parties to submit a joint letter presenting the issues to be addressed by the Court prior to Mr. St. Hilaire's deposition. *Id.* The parties complied with this order, and on October 27, 2023, they filed a

---

[1] Later, Judge Conner assigned this case to us "for all further pretrial proceedings including report and recommendation on dispositive motions." *Doc. 66* at 2.  On November 8, 2023, this case was reassigned to Judge Munley, but remained referred to us. *See docket generally*.

document styled as the questions presented portion of a brief but including *both*

parties' proposed answers ("Questions Presented Letter"). *Doc. 67.* The parties

agreed on five questions presented ("the Questions Presented") to be decided prior

to Mr. St. Hilaire's deposition. *Id.* Two of these questions are particularly relevant

at this juncture:

> 1.  Whether Capital must disclose to its insurer, Atlantic, information that Capital is withholding as privileged regarding the underlying lawsuit for which it seeks coverage.
>
> Atlantic's Answer:  Yes, Capital must produce to its insurer information relating to its defense and settlement of the lawsuit for which it seeks coverage, *i.e.*, the consolidated class actions transferred by the Judicial Panel on Multidistrict Litigation into *In Re: Blue Cross Blue Shield Antitrust Litigation*, Master File No. 2:13-cv-20000-RDP (the "MDL Action").
>
> Capital's Answer:  No, Capital is not obligated to disclose its own privileged information to Atlantic, which has not agreed to provide coverage for the MDL; nor may Capital lawfully disclose the privileged information of other Blue Plans or the Blue Cross Blue Shield Association ("the Association").
>
> 2.  Whether, if a privilege applies, the privilege has been waived by sharing the information with other Blue Plans and/or the Association.
>
> Atlantic's Answer:  Yes, the privileges upon which Capital relies have been waived and Capital has not demonstrated any exception to waiver.  The joint defense/common interest doctrines do not apply to the information Atlantic seeks.
>
> Capital's Answer: No.  Capital, the other Blue Plans, and the Association are co-defendants in the MDL and are jointly

defending that case pursuant to a Common Interest and Confidentiality Agreement.  Materials shared in the context of this arrangement are covered by the common interest and/or joint defense doctrines, without any waiver of Capital's privilege.  Nor is Capital capable of waiving any privilege that belongs to other entities, including other Blue Plans or the Association, that have not themselves waived privilege and are not before this Court.

*Doc. 67* at 1.

After reviewing the Questions Presented Letter, we set forth a briefing schedule, with Atlantic styled as the movant kicking off the briefing with a brief in support of its positions summarized in the Questions Presented Letter. *Doc. 68*. The parties complied with this briefing schedule: Atlantic filed a brief in support on January 10, 2024,[2] Capital filed a brief in opposition on February 9, 2024, Atlantic filed its reply brief on February 23, 2024, and, after being granted leave to do so, Capital filed a sur-reply on March 20, 2024. *Docs. 78, 79, 87, 118, 119, 124, 127*.

In the midst of this briefing schedule, on February 23, 2024, the same day Atlantic filed its reply brief, the Blue Cross Blue Shield Association[3] ("the

---

[2] In addition to its brief in support, Atlantic also filed a declaration in support of its brief in support, signed by a Justine Casey ("the Justine Casey declaration"). *Doc. 76*.  Currently pending is Capital's motion to strike the Justine Casey declaration. *Doc. 80*.

[3] "Each of the 36 Blue Plans, including . . . Capital, is an independently owned and separate legal entity and is a member of the . . . Association . . ., which is also an independent and separate legal entity." *Doc. 96* at 5.

Association") filed a motion to intervene "for the limited purpose of responding 'no' to Question 1" in the Questions Presented Letter, specifically in regards to those documents being sought that the Association itself created. *Doc. 84.* Briefs quickly followed and the motion was fully briefed as of March 22, 2024. *Docs. 85, 117, 129.*

On March 5, 2024, we received another motion for limited intervention, this one filed by the Blue Cross Blue Shields of Arizona, Idaho, Kansas, Kansas City, Nebraska, North Dakota, and Wyoming, and Elevance Health, Inc. (collectively, "the Other Blues"). *Doc. 95.* The Other Blues seek to intervene "for the limited purpose of filing a motion for protective order to prevent the discovery of their confidential, joint defense privileged and/or work product protect documents, communications, and information, which Atlantic seeks in discovery by seeking to compel production of documents and communications on Capital's privilege log and through the deposition testimony of [Mr.] St. Hilaire." *Doc. 95* at 2. The parties briefed the motion, and it is now ripe for decision.[4] *Docs. 96, 125, 126, 134.*

---

[4] Puzzlingly, Atlantic filed two briefs in opposition to the Other Blues' motion to intervene. *Docs. 125, 126.* The first brief was filed in opposition to Blue Cross Blue Shield of Kansas City's ("Kansas City Blue") motion to intervene. *Doc. 125.* The second brief in opposition opposed the intervention of all the Other Blues—except Kansas City Blue ("the remaining Other Blues"). *Doc. 126.* Especially baffling is that these two motions are almost identical, and we were unable to decipher a relevant distinction between Kansas City Blue and the remaining Other Blues. *Compare doc. 125 with doc. 126.* When we refer to the brief in opposition to the Other Blues' motion to intervene going forward, we will

## III.  Discussion.

The Association and the Other Blues (collectively "the Movants") both argue that they are entitled to intervention as of right or, in the alternative, permissive intervention. *Docs. 84, 95*.  Because we conclude that the Movants are entitled to intervene as of right, we do not reach their arguments regarding permissive intervention.

"Federal Rule of Civil Procedure 24(a)(2) requires a district court to grant intervention as of right if '(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.'" *Transource Pennsylvania, LLC v. Dutrieuielle*, No. 21-2567, 2022 WL 2235466, *2 (3d Cir. June 22, 2022) (quoting *United States v. Territory of Virgin Islands*, 748 F.3d 514, 519 (3d Cir. 2014)) (itself quoting *Harris v. Pernsely*, 820 F.2d 592, 596 (3d Cir. 1987)).  Atlantic disputes only the first and fourth elements; it argues that the Movants' motions were untimely and that the Movants' interests are adequately represented by Capital. *Doc. 117* at 14–25; *Doc. 126* at 15–25.

---

cite to the second brief in opposition (*doc. 126*) rather than citing to both briefs for the identical arguments therein.

### A. Timeliness.

"Courts consider 'the totality of the circumstances' when conducting a timeliness analysis." *Schwenk*, 2023 WL 8359871, at *5. "Among the factors to be considered are: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Id.* "The mere passage of time . . . does not render an application untimely[.]" *Choike v. Slippery Rock Univ. of Pennsylvania of State Sys. of Higher Educ.*, 297 F.App'x 138, 141 (3d Cir. 2008). Instead, "the critical inquiry is: what proceedings of substance on the merits occurred?" *Id.* Examining the stage of the proceeding in this manner not only goes to the first factor delineated above but the second. "This is because the stage of the proceeding is inherently tied to the question of prejudice the delay in intervention may cause to the parties already involved." *Id.* Finally, when considering the reason for the delay, courts must measure the delay "from the time the proposed intervenor knows or should have known of the alleged risks to his or her rights or the purported representative's shortcomings." *Benjamin ex rel. Yock v. Department of Public Welfare of Pennsylvania*, 701 F.3d 938, 950 (3d Cir. 2012).

We have summarized above the status of these proceedings. Here, because the Movants are seeking leave to intervene for a limited purpose, we focus on those proceedings associated with the Questions Presented Letter and the materials which the Movants and Capital assert are privileged ("Arguably Privileged

Materials"). The Questions Presented Letter was filed on October 27, 2024, and briefing began with Atlantic's brief in support filed on January 10, 2024, and was completed with Capital's sur-reply filed on March 20, 2024. *Docs. 67, 78, 79, 87, 118, 119, 124, 127*. We have not yet issued a decision on the Questions Presented Letter. *See docket generally*. Prior to completion of the Questions Presented Letter briefing, both the Association and the Other Blues filed motions to intervene. *See doc. 84* (filed on February 23, 2024); *see also doc. 95* (filed on March 5, 2024).

The Movants assert in their briefs in support that they filed their motions to intervene "shortly after" discerning that the Arguably Privileged Materials were in dispute. *Doc. 85* at 13 ("[The Association] satisfies the timeliness factor because its request to be heard is being made shortly after it discerned from the parties' briefing that its privileged documents are potentially at issue."); *Doc. 96* at 13 ("Movants satisfy the timeliness requirement because they filed their motion for Limited Intervention shortly after they discerned from Atlantic's Briefs that Atlantic was seeking their confidential, joint defense privileged and/or work product protected documents, communications, and information."). In their reply briefs, the Movants explain that they only determined that the Arguably Privileged Materials were in dispute when reviewing Atlantic's brief in support of the Questions Presented filed on January 10, 2024. *See doc. 129* at 14 ("[The Association] had no notice that its documents were in dispute until "Atlantic

attached to its brief [in support of the Questions Presented] a privilege log that listed documents from the Association's own in-house and outside lawyers."); *Doc. 134* at 7 ("here, it remained unclear to Movants which documents and communications that Atlantic sought to compel production even after reviewing Atlantic's Opening Brief, which cites only a handful of entries from Capital's privilege log").

Atlantic asserts, however, that the Association's and the Other Blues' delay should be calculated from November 2, 2022, when Atlantic issued non-party subpoenas ("the Non-Party Subpoenas") to the Association and one of the Other Blues, Elevance Health, Inc. ("Elevance"),[5] seeking, among other information, the

---

[5] Atlantic does not set forth case law why Elevance's purported knowledge based on this subpoena should be imputed to the rest of the Other Blues. *See doc. 126* at 23–25.  The Other Blues, however, point to case law saying we should *not* impute such knowledge:

> Moreover, Atlantic cannot cite any case law supporting its argument that somehow any purported 'knowledge' possessed by Elevance . . . due to [the Non-Party Subpoenas] may be imputed to the other [Other Blues], who are independently owned and separate legal entities, for purposes of evaluating timeliness.  To the contrary, this exact argument has been rejected when evaluating timeliness of intervention under Rule 24 in order to assert joint defense privilege protections in a discovery dispute. *Pensacola* [*Firefighters' Relief Pension Fund Bd. of Trs. v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 3:09cv53/MCR/MD) 2011 U.S. Dist. LEXIS 88468, at *8 (N.D. Fl. July 7, 2011) (rejecting argument that intervention was untimely because 'by virtue of [the intervenors'] common interest in the litigation, [the earlier] knowledge of one [intervenor of the discovery dispute] should be imputed to all.

Arguably Privileged Materials. *Doc. 117* at 18; *doc. 126* at 23. According to Atlantic, the Association and Elevance "directed Atlantic to obtain the documents directly from Capital." *Doc. 117* at 18; *doc. 126* at 23. And when Atlantic did, "this exact discovery dispute arose[.]" *Doc. 117* at 18; *doc. 126* at 19–20. According to Atlantic, "[g]iven [its] prior requests directly to [the Association and Elevance] and [the Association's and Elevance's] direction that Atlantic serve its requests to Capital directly, [the Association and Elevance] should have – at the very least – known about the risk of a dispute regarding these documents arising in this litigation." *Doc. 117* at 18; *doc. 126* at 20.

The Movants concede that the Association and Elevance received the Non-Party Subpoenas and that they replied to them. *See doc. 129* at 12–13; *doc. 134* at 11. But the Movants argue that they objected to portions of the Non-Party Subpoenas based on privilege in addition to their objections based on a party being able to provide the requested information. *See doc. 129* at 12–13; *doc. 134* at 12–13. Accordingly, the Movants argue, when Atlantic did not further pursue the Non-Party Subpoenas, they assumed Atlantic "abandoned its improper pursuit" of the Arguably Privileged Materials. *Doc. 134* at 12; *see also doc. 129* at 12–13.

---

. . . The common knowledge assertion is speculative; no facts have been shown to prove it.')"
*See doc. 134* at 14 (alterations in original). We do not reach the question of whether earlier knowledge should be imputed to the Other Blues because we find that Elevance, like the Association, did not have earlier knowledge.

Atlantic and the Movants thus dispute the Association's and Elevance's responses to the Non-Party Subpoenas and, accordingly, when the Movants knew or should have known that the Arguably Privileged Materials were in dispute.  As we analyze this dispute, we are reminded that "we are compelled to accept the movant's motions and pleadings as true to the exten[t] that they are non-conclusory and well-pleaded[.]" *Viet Nam Vets Motorcycle Club – Pa by John Tokarcik v. Lightner*, 1:15-cv-1346, 2015 WL 12090164, *4 (M.D. Pa. Oct. 7, 2015) (citing *Olympic Sports Data Servs., Ltd. v. Maselli*, Civ. A. No. 07-117, 2008 WL 5377626, at *2 (E.D. Pa. Dec. 22, 2008).  Here, we need not rely only on the Movants' well-pleaded assertions, as we have the Association's and Elevance's responses to the Non-Party Subpoenas ("Non-Party Subpoena Responses").[6] *Doc. 117-1, 125-1*.  And the Non-Party Subpoena Responses clearly show that the Association and Elevance did object to the Non-Party Subpoenas for both seeking documents "that are readily available through party discovery" *and* "to the extent that [they] [sought] Privileged Information." *See, e.g., doc. 117-1* at 13–14; *doc. 125-1* at 32–33.  It is thus not established that the Movants should have known about the discovery dispute at the time they received the Non-Party Subpoenas because the Movants informed Atlantic that some of the materials being sought

---

[6] The Movants do not dispute that the Non-Party Subpoena Responses filed by Atlantic are authentic. *See docs. 129, 134*.

were privileged and Atlantic did not directly dispute this with the Movants, nor did
it do so on the docket.  We thus disregard Atlantic's argument that the Movants
knew or should have known of the threat to their rights since November 2022.

Atlantic also argues that the Movants should have intervened when the
Questions Presented Letter was first docketed on October 27, 2023. *See doc. 117* at
19; *doc. 126* at 24–25.  According to Atlantic, "the parties' recent briefing does not
raise any new issues relating to [the Arguably Privileged Information]." *Doc. 117*
at 19; *doc. 126* at 24–25.  But the Movants aver that the privilege log filed along
with Atlantic's brief in support on January 10, 2024, was necessary for them to
establish that their rights were at risk and that Capital's February 9, 2024 brief in
opposition was necessary to establish that the Movants' interests were not
adequately represented. *See doc. 129* at 14 ("[The Association] had no notice that
its documents were in dispute until Atlantic attached to its brief a privilege log that
listed documents from [the Association's] own in-house and outside lawyers. . . .
And even then, [the Association] attempted to confirm with Atlantic that Atlantic
actually meant to seek these documents . . ., and then promptly filed this motion
when Atlantic did not so confirm."); *doc. 134* at 14–15 ("It was not until the briefs
on the Questions Presented Letter were filed by the parties that the Movants
learned of the nature of Atlantic's arguments and Capital responsive arguments,
which reveal that the issues and arguments apply differently to Movants as

13

opposed to Capital.").  Again, we are "to accept the movant[s'] motions and pleadings as true to the extent they are non-conclusory and well-pleaded." *Viet Nam Vets Motorcycle Club*, 2015 WL 12090164, at *4.  And, while it is true that the parties' briefing does not raise "new issues" it does contain new information about the specific Arguably Privileged Materials being sought. *Doc. 76-7.*  We thus find any delay between when the Movants knew or should have known their interests were at risk and when they filed their motions to intervene was minimal.

Atlantic also argues that it will be prejudiced if the Movants are permitted to intervene.  Specifically, Atlantic expresses concern that discovery was set to close on April 30, 2024, and during that time the Court needed to rule on the pending discovery dispute, and "Capital has to produce and Atlantic has to review the additional documents, then take the deposition of Mr. St. Hilaire." *Doc. 117* at 17; *see also doc. 126* at 20.  Atlantic further predicts that the Movants will object at Mr. St. Hilaire's deposition, further prejudicing Atlantic's attempt to gather information from him. *Doc. 117* at 17; *doc. 126* at 22–23.  The Movants counterargue that their motions to intervene will be briefed weeks before the close of discovery "and on the same timeline as the parties' own briefing on the underlying issue in dispute." *Doc. 129* at 15–16; *see also doc. 134* at 8 ("Movants filed their Motion on a similar timeline and less than eight weeks after Atlantic filed its Opening Brief").  The Association goes so far as to argue that their

14

"motion[s] ha[ve] nothing to do with Atlantic's apparent inability to meet the current fact discovery deadline." *Doc. 129* at 16.

The Movants seem not to comprehend that their motions inherently add steps to be taken during the discovery process: now, in addition to deciding the pending discovery dispute, we must decide whether the Movants are permitted to intervene and, if so, will then need to give the Movants time to fully brief their positions regarding the Arguably Privileged Materials.  Only after that briefing would we be able to decide the pending discovery dispute, after which the parties would then need to wrap up discovery including deposing Mr. St. Hilaire.  As evidenced by the date of this order, resolving the discovery dispute and concluding discovery prior to April 30, 2024, was impossible.  Atlantic's concerns that it will be prejudiced, however, are mollified by our order staying discovery.  As to Atlantic's concerns that the Association and the Other Blues will object excessively at Mr. St. Hilaire's deposition, we will handle any such objections as they arise.

Finally, we note that "[t]here is a general reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to intervene." *Benjamin ex rel. Yock*, 701 F.3d at 949.  With this principal in mind, and after considering the totality of the circumstances, we find that the Movants' motions are both timely.

**B. Adequate Representation.**

Atlantic also argues that the Movants fail to satisfy the fourth element necessary for intervention: that their "interest is not adequately represented by an existing party in the litigation." *Transource Pennsylvania, LLC*, 2022 WL 2235466 at *2 (quoting *United States v. Territory of Virgin Islands*, 748 F.3d at 519) (itself quoting *Harris*, 820 F.2d at 596). Accordingly, we "conduct a 'separate inquiry into whether . . . other existing parties will adequately advocate the applicant's interest.'" *Balint v. Allstate Insurance Co.*, NO. 3:23-CV-01190, 2023 WL 6143502, *6 (M.D. Pa. Sept. 20, 2023) (quoting *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 972 (3d Cir. 1998)).

"As the Supreme Court stated, '[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.'" *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). "The most important factor in determining adequacy of representation is how the interest of the absentee compares with the interest of the present parties." *Mountain Top*, 72 F.3d at 368–69 (quoting 7C Wright, Miller & Kane, *Federal Practice & Procedure* § 1908, at 263 (1986)). "If the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not

16

adequately represented." *Id.* (quoting Wright & Miller § 1909 at 318–19).  "If his interest is identical to that of one of the present parties, or if there is a party charged by law with representing his interest, then a compelling showing should be required to demonstrate why this representation is not adequate." *Id.*

The Association argues that "[n]o party other than [the Association] is capable of asserting and protecting [the Association's] privilege" as to the "materials it created and shared with Capital in common interest[.]" *Doc. 85* at 15–16.  More specifically, the Association argues that "[t]he original holder of privilege alone has the power to waive as to its own privileged materials" and, to support this argument, it cites to the principle that "[a] member is not authorized to waive the privilege for another member's communication." *Doc. 85* at 19 (quoting Rest. 3d Law Governing Lawyers § 76 cmt. g (2000); citing *Interfaith Hous. Del., Inc. v. Town of Goergetown*, 841 F. Supp. 1393, 1402 (D. Del. 1994)).

The Other Blues, however, are seeking leave to intervene to assert their privilege as to all Arguably Privileged Materials, regardless of which entity created the material. *Doc. 96* at 6–7, n.1.  The Other Blues thus argue that, "although [the Other Blues] and Capital share an interest in preventing the disclosure of" the Arguably Privileged Materials, "Capital *may not* be able to adequately represent [the Other Blues'] interests" because the Other Blues "and Capital are not similarly suited in certain important respects." *Id.* at 17–18 (footnote omitted).

Atlantic characterizes both motions to intervene as "superfluous and unnecessary" because "Capital has fully protected the privilege interests [the Movants] claim[ ] [they] must intervene to protect." *Doc. 117* at 20; *doc. 126* at 15. Atlantic argues that "[t]here is *no* divergence of interests between [the Movants] and Capital in protecting the documents." *Doc. 117* at 20; *doc. 126* at 15. And Atlantic points out that the Movants "have cited no case law to suggest that Capital cannot assert attorney-client privilege for documents shared with it under the joint defense doctrine." *Doc. 117* at 23–24; *doc. 126* at 17–18. Finally, Atlantic argues that the Movants' "arguments relating to waiver are a red herring" because "waiver is not at issue."[7] *Doc. 117* at 24; *doc. 126* at 18.

The Association responds in its reply brief to Atlantic's above arguments. According to the Association, it "has a unique interest in its own privileged materials and is differently situated from Capital when it comes to protecting these

---

[7] We must note that Atlantic's argument that any discussion about waiver in the Movants' briefs is a red herring appears to misunderstand the Movants' arguments. Atlantic's "red herring" argument is rooted in the Questions Presented Letter which first asks "[w]hether Capital must disclose to . . . Atlantic [ ]" the Arguably Privileged Materials and then separately asks "[w]hether, if a privilege applies, the privilege has been waived by sharing the information with other Blue Plans and/or the Association." *Doc. 67* at 1. But the second question is about whether Capital has *already* waived its privilege by sharing the Arguably Privileged Information and the Movants are instead contemplating a potential *future* waiver occurring if Capital were to be required to disclose the Arguably Privileged Materials to Atlantic. Clearly, possible waiver is relevant to the limited purposes for which the Movants seek to intervene. We will, therefore, not consider Atlantic's red herring argument further.

materials as against Atlantic." *Doc. 129* at 6.  More specifically, the Association

argues that is "irrelevant that *Capital* might not waive *its own* legal privilege by

sharing information with its insurer (Atlantic), since the at-issue documents are

[*Association*] documents, and Atlantic and [the Association] unequivocally do not

share a relationship of legal privilege." *Id.*  And because the Association and

Atlantic are not in the same relationship as Capital and Atlantic, the Association

argues it would be "differently impacted" by the disclosure of the Arguably

Privileged Materials. *Id.* at 19.

    Similarly, in their reply brief, the Other Blues argue that "Atlantic is

asserting arguments against Capital as to why it is entitled to the Blues' joint

defense privileged information which do not apply to [the Other Blues,]" including

arguments that Capital put the Arguably Privileged Materials "at issue" by

bringing this suit and that Capital has certain "'cooperation' obligations under the

Atlantic/Capital [Insurance] Policy[.]" *Doc. 134* at 19–20.  The Other Blues also

argue that their interests "may differ from Capital's, because unlike Capital, [the

Other Blues] do not have a direct interest in the outcome of this coverage

litigation." *Id.* at 20.

    The Movants clearly share a common goal with Capital: to prevent the

disclosure of the Arguably Privileged Materials. *Cf. Sackman v. Liggett Group,*

*Inc.*, 167 F.R.D. 6, 22 (E.D.N.Y. 1996) ("while it appears that [the defendant] and

the putative intervenors do share a common goal with respect to this litigation, the Court concludes that the movants have satisfied their burden and established that their interests may not be adequately represented"). However, the Movants have set forth clear and relevant differences between their interests and Capital's. *Id.* ("the [ ]intervenors reason that [the defendant] may have a somewhat different agenda with respect to its litigation tactics than [they do]"). Moreover, if we decide to require Capital to turn over to Atlantic the Arguably Privileged Materials, the impact on the Movants may be different than the impact on Capital. *Cf. Michaels Stores, Inc. v. Castle Ridge Plaza Associates*, 6 F. Supp. 2d 360, 365 (D.N.J. 1998) ("The impact on [the intervenor] of a successful outcome by the Plaintiff in this case will not have the same impact on it as it will on [an existing party]."). Keeping in mind our obligation to accept the movants' well-pleaded and non-conclusory pleadings as true, *Viet Nam Vets Motorcycle Club*, 2015 WL 12090164, at *4, we find that the Movants have each met their relatively light burden to show that "representation of [their] interest[s] 'may be' inadequate[,]" *Mountain Top Condominium Ass'n*, 72 F.3d at 368 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

We thus find that the Movants have satisfied the four elements of intervention as-of-right, and we will grant their motions (*docs. 84, 95*) to intervene on this basis. We will, however, only grant the Other Blues' motion to intervene in

20

part.  We will not permit the Other Blues to file a motion for protective order.

Instead, as outlined in the accompanying order, we will permit the Other Blues,

and the Association, to file briefs regarding whether the Arguably Privileged

Materials should be withheld from discovery.


### C. Atlantic's Requests.

In its briefs in opposition, Atlantic made requests in the event that we were

to grant the Movants' motions to intervene. *See docs. 117, 125, 126*.  Atlantic's

requests are fourfold:

> (1)  An extension of the discovery deadline. *Doc. 117* at 8–9;
> *Doc. 126* at 10; *Doc. 125* at 11.
> (2)  The Court "require [the Association] to produce [certain]
> documents *in camera* so the Court can assess whether they
> relate to [the Association] or [more] generally to the defense of
> the claims asserted in the MDL Action[.]" *Doc. 117* at 12.
> (3)  "[T]he Court order [the Movants] to immediately inform
> the parties and the Court of any objections it intends to make
> during the deposition of Mr. St. Hilaire.  To the extent the Court
> has already ruled on these objections, Atlantic requests the
> Court order [the Movants] to follow that ruling." *Doc. 125* at
> 24; *see also doc. 117* at 17; *doc. 126* at 23.
> (4)  "Atlantic will need to serve . . . Rule 30(b)(6) deposition
> notice[s] to [the Movants] and continue its meet and confer
> efforts with Elevance [and the Association] with respect to the
> [Non-Party Subpoenas]." *Doc. 126* at 17; *see also doc. 117* at
> 23; *doc. 125* at 18.

We have already stayed fact discovery. *See doc. 135*.  We will ensure when we unstay the deadlines that the parties are able to abide by our orders and properly complete discovery.

We will not, however, grant Atlantic's request that the Court "require [the Association] to produce [certain] documents *in camera*[.]" *Doc. 117* at 12.  To the extent the Association considers *in camera* review necessary to our decision regarding the Association's intervention, we disagree.  We find, as summarized above, that the Association is permitted to intervene to argue that the documents it identifies as its own work product are privileged.

As to Atlantic's third request, we, of course, expect all parties to follow our rulings.  Accordingly, an order to the Movants that they follow our ruling regarding potential objections when participating in the deposition of Mr. St. Hilaire would be redundant.  And, as we make clear in the accompanying order, the Movants will participate in the deposition of Mr. St. Hilaire only to preserve their interests in the Arguably Privileged Materials and in accordance with our forthcoming decision regarding what materials or information are to be disclosed to Atlantic.

Finally, it is unclear why Atlantic considers it necessary to conduct a Rule 30(b)(6) deposition of the Movants when their intervention is for such limited purposes and discovery is so near to a close.  It is similarly unclear why Atlantic

would need to resume meet and confer efforts regarding Non-Party Subpoenas which were initially sought in November 2022 and, to our knowledge, were never pursued after the Association and Elevance served their Non-Party Subpoena Responses in December 2022.  Accordingly, to the extent that Atlantic is requesting Court involvement in these proposed actions, we will deny such requests.

**IV.  Conclusion.**

In accordance with the discussion above, we will grant the pending motions to intervene as detailed in the simultaneously-filed order.

_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge

23